# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JOSHUA R. SLATER, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 11-1156-CV-W-DW-P |
| STATE OF MISSOURI, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Joshua Slater, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on November 11, 2011, seeking to challenge his 2004 convictions and sentences for first degree assault on a police officer, armed criminal action, fleeing, tampering, and second degree burglary, which were entered in the Circuit Court of Clay County, Missouri.

Petitioner raises five grounds for relief: (1) that the prosecution violated discovery rules by not producing certain evidence; (2) that the trial court erred in denying petitioner's motion to suppress statements he made to a detective because the police officers initially lied to him about the reason for his arrest; (3) that trial counsel was ineffective for failing to call an expert witness whose testimony would have proved petitioner was the one who kicked the front door and not the driver of the vehicle; (4) that the mens rea element was left out of the jury instructions; and (5) that the indictment was not signed.

## SUMMARY OF THE FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion for post-conviction relief, the Missouri Court of Appeals summarized the facts as follows:

In December 2003, a neighbor observed a burglary in progress at a house located across the street from her own residence. She observed two men enter the house after one of the men kicked in the door. She observed a third man waiting in a white SUV. She could not see any of the men well enough to identify them.

Responding to the neighbor's 911 call, police arrived at the burglarized residence. They observed that the driver of the white SUV was wearing a black leather jacket and was unshaven. When police approached the SUV, the driver took off to flee the scene in the vehicle. Billy Coleman and Gerry Farr were apprehended at the burglarized residence by other police officers as participants in the burglary.

In the meantime, police attempted to stop the white SUV near the burglary scene, but the driver nearly struck them with the vehicle and continued on, resulting in a dramatic high-speed chase. Eventually, the SUV struck a light pole, knocking it down, and was driven into a parking lot where it struck a snow bank and stopped. The driver, unable to open the driver's side door, exited the vehicle through the front door passenger window and fled afoot into a nearby building. A man identified as [petitioner] was ultimately apprehended.

Officer Roetman identified [petitioner] as the man he saw driving the SUV. [Petitioner] was unshaven and wearing a leather jacket when arrested, comporting with the appearance of the driver of the SUV as observed by the several police officers in pursuit of the vehicle. When caught by police, [petitioner] was out of breath and perspiring profusely. Police officers searched him and found pieces of broken glass in the left pocket of his jacket that matched the glass broken out of the driver's side front window of the SUV. The right pocket of his jacket contained a Motorola-type walkie-talkie. Near a fence where the SUV had stopped, police officers found a pair of relatively clean white gloves.

In total, three suspects were apprehended by the police in connection with the home burglary and vehicle chase: [petitioner], Billy Coleman, and Gerry Farr. The arresting officers took the shoes of all three suspects into evidence, as well as the victims' entry door, for testing by the crime lab.

[Petitioner] was charged as a prior offender with various crimes connected to the home burglary and vehicle chase: one count of second-degree burglary, one count of resisting arrest, two counts of

first-degree assault of a law enforcement officer, two counts of armed criminal action, and one count of first-degree tampering.

At trial, [petitioner's] counsel conceded in opening statement that [petitioner] was guilty of burglary but denied that he was the driver of the get-away SUV and urged that, therefore, [petitioner] was not guilty of the assaults. Trial counsel stated that [petitioner] was the one who kicked in the front door, and, accordingly, he could not have been the driver of the vehicle. Therefore, he could not have been the one who tried to run over two police officers during a high-speed chase.

At trial, Sergeant Lewark testified that he saw the driver of the SUV and that there was "no doubt" in his mind that [petitioner] was the one driving the SUV. Officer Roetman testified that he saw the driver of the SUV and that he was "absolutely certain" that [petitioner] was driving the SUV. One of [petitioner's] two co-defendants, Billy Coleman, testified at trial. He stated that at the time of the incident, he had a brace on his left leg and a cast on his right leg.

[Petitioner] also testified at trial. He admitted that he accompanied three other men in the SUV to the home in Smithville and he participated in the break-in. However, he denied driving the SUV. He stated that he was hiding in the back seat of the vehicle. He claimed that he was not able to drive because his vision is impaired. [Petitioner] testified that a man he knew as "Julio" was driving the SUV that day.

[Petitioner] testified that when the four men arrived at the residence, he got out of the vehicle and knocked on the front door. When no one answered, he kicked in the front door. Julio stayed in the vehicle, and [petitioner] and the other two men went into the house.

[Petitioner] testified that when he heard police sirens during the burglary, he dropped the presents, ran, and jumped into the back passenger side of the four-door vehicle while it was moving. He remained ducked down in the back during the police chase because he wanted to remain hidden. Eventually, he felt some "bumps" and the glass from the car's windows shattered and fell on him. When the vehicle stopped and the driver jumped out the window, [petitioner] opened the door and took off running after him. Eventually, [petitioner] was apprehended by the police on foot. At trial, [petitioner] was able to draw a diagram of the floor plan of the

-3-

> burglarized house from memory, based on his recollection of being in the house.
>
> As rebuttal to [petitioner's] testimony, the prosecutor recalled Sergeant Lewark, who had been involved in the arrest of the suspects. The entry door to the house that was burglarized was admitted into evidence without objection. However, defense counsel objected to any testimony from Sergeant Lewark about who had left the partial mark on the door, claiming a discovery violation by the State because he had not been given any formal report or "anything prepared" in connection with the door. Defense counsel also objected because Sergeant Lewark was not an expert and, therefore, there was no foundation for his opinion about whose shoes had left the mark on the door. The prosecutor stated that Sergeant Lewark had never made a written report about his opinion. The trial court overruled the objection.
>
> Sergeant Lewark testified that he seized [petitioner's] shoes and the shoes of Billy Coleman and Gerry Farr ([petitioner's] co-defendants), because he had noticed some marks on the entry door that was kicked in. Although he conceded that he was not an expert in shoe print comparison, Sergeant Lewark testified that based on the scuffmarks and dirt on the steel door, he formed the opinion (the non-expert opinion) that the marks matched the shoes of Gerry Farr, [petitioner's] co-defendant, and did not match the shoes that [petitioner] or the other co-defendant had been wearing. All three pairs of shoes and the entry door were ultimately admitted as exhibits at trial.
>
> Trial counsel conducted no cross-examination of Sergeant Lewark's rebuttal testimony and presented no surrebuttal evidence. He did not request a recess or continuance of the trial after Sergeant Lewark's rebuttal testimony.
>
> The jury convicted [petitioner] of five of the charged counts. He was sentenced to seven years for second-degree burglary, four years for resisting arrest, thirty years for first-degree assault of a law enforcement officer, thirty years for armed criminal action, and seven years for tampering, all to be served consecutively.

(Respondent's Exhibit H, pp. 2-6).

Before the state court findings may be set aside, a federal court must conclude that the state

court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUNDS 1 & 2**

In ground 1, petitioner contends that the State committed a discovery violation by failing to disclose footprint evidence. In ground 2, petitioner asserts that Officer Lewark's testimony regarding the footprint on the door was improper because Officer Lewark was not an expert.

On direct appeal, the Missouri Court of Appeals disposed of the claims raised in grounds 1 and 2 as follows:

> [Petitioner] claims that "the State committed a discovery violation by telling defense counsel that there was no footprint evidence recovered from the burglary scene and then failing to correct the misinformation by disclosing Lewark's opinion to the defense." The State responded that it had no footprint evidence to disclose and that the disputed testimonial evidence was rebuttal evidence and that it did not commit a discovery violation because it is not required to disclose rebuttal evidence prior to trial.
>
> Prior to trial, [petitioner] filed "Defendant's Request for Discovery," in accordance to Rule 25.03, a general request for discovery. Subsequently, he filed a "Motion for Additional Discovery," as

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-5-

provided by Rules 25.03 and 25.04 and for disclosure of exculpatory evidence as required by under [sic] ***Brady v. Maryland*, 373 U.S. 83 (1963)**. The request sought "additional discovery in the form of footprints taken at the scene of the alleged burglary at 101 Shasta Daisy Drive," and copies of fingerprints taken at the crime scene and/or from the SUV. The court conducted a pre-trial hearing at which another prosecutor stated that "[t]here's no indication any footprints or latent fingerprints were recovered from the scene of the burglary or from the SUV... If there were, we will certainly turn them over and provide them to Mr. Lance and his client." The court informed the prosecutor that the State was "probably obligated to do that... outside the motion," and the prosecutor responded, "Yes, sir... Absolutely, Judge." The court asked the prosecutor, "Ms. Moore, you're affirmatively representing as an officer of the Court that there are not fingerprints or footprints, no evidence of that sort, from either scene?" and, again, she responded, "That's my understanding, Your Honor. Of course, if the State becomes aware that such evidence exists, we will immediately turn that over to the defense. But it is my understanding today that there are no footprints recovered from the scene." The court then asked the prosecutor to contact the Smithville Police Department to be certain that no footprint or fingerprint evidence exists, to which prosecuting attorney responded, "We can certainly do that, Judge." The court overruled [petitioner's] "Motion for Additional Discovery" "as unnecessary because the law requires everything that the motion seeks without the necessity of the motion if such items are in existence." No footprint evidence was produced by the State, and none was introduced at trial.

At trial, when defense counsel objected to the State's offer of the Lewark testimony, the State responded that Officer Lewark's testimony would not be about footprints and was not offered as expert testimony. The court was told that Officer Lewark would testify about his observations of the shoes of the suspects seized and the marks left on the front door of the door of the burglarized residence. The court overruled defense counsel's objections and allowed Officer Lewark's testimony, comparing it to a layperson's testimony regarding a handwriting sample.

Officer Lewark did not testify about footprints or fingerprints, the subject of the discovery motion. The testimony was about the officer's observations regarding marks made on the front door of the burglarized residence and the shoes worn by three persons believed to have burglarized the house when they were arrested. The testimony was not about footprints. The evidence was offered in

-6-

rebuttal to [petitioner's] defense that he was not the driver of the SUV because he, unlike the driver, left the SUV and entered the burglarized residence.

Rebuttal evidence is any evidence that directly or indirectly explains, counteracts, repels, or disproves the defendant's evidence, either directly or by implication, and is admissible even if it was available during the State's case-in-chief. ***State v. Hamilton*, 892 S.W.2d 371, 379 (Mo. App. E.D. 1995)**. The State is normally under no obligation to disclose rebuttal witnesses or an item of physical evidence that rebuts a defendant's theory of defense. ***State v. Clark*, 975 S.W.2d 256, 263 (Mo. App. S.D. 1998)**. The only exceptions to the general rule are where the witness or physical evidence is presented to rebut an alibi defense or a defense of mental disease or defect. *Id.* Officer Lewark's testimony was rebuttal evidence. The State did not commit a discovery violation.

(Respondent's Exhibit D, pp. 7-9).

Excluding the burglary itself, only the driver of the white SUV committed the criminal acts for which [petitioner] was charged and convicted. If he was not the driver when the acts occurred, he is innocent of the criminal charges attendant to the conduct of the driver, or in the case of tampering, to the stolen vehicle. [Petitioner's] opposition to Officer Lewark's testimony that the scuff marks on the front door of the burglarized house appear to be inconsistent with [petitioner's] shoes is disputed because it does not support his claim that he entered the house and was not the driver of the SUV, who never departed the vehicle at the residence before attempting to escape. Even if the court abused its discretion by allowing Officer Lewark's testimony, there is "no reasonable probability that the trial court's error affected the outcome of the trial" and, thus, no prejudice, because the evidence that [petitioner] was driving the vehicle is overwhelming even without Officer Lewark's testimony. **[*State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006)]**.

The evidence that [petitioner] was the driver of the white SUV was overwhelming, and whether the trial court abused its discretion by admitting Officer Lewark's observations regarding the marks on the front door of the burglarized residence and the shoes of the persons arrested need not be determined. [Petitioner] was observed as the driver of the vehicle by at least three police officers. He was seen exiting the vehicle after the "chase" and shortly before his arrest; he

-7-

was observed entering a nearby building after he departed the vehicle through the front passenger window of the SUV; and he was arrested within the building perspiring profusely, a physical condition that corroborates the evidence that he ran from the location where the vehicle was abandoned. Chief of Police Wilson identified [petitioner] at trial as the person he saw in the driver's seat when he first arrived at the scene of the burglary and drove his police vehicle to a stop "hood to hood" with the white SUV and when the vehicle fled. Officer Erin Knox identified [petitioner] at trial as the driver she saw driving the SUV when she and Officer Anthony Roetman attempted to stop the vehicle and as the driver attempted to strike Officer Roetman with the vehicle. Officer Roetman identified [petitioner] at trial as the person he saw driving the SUV during the attempted escape, as the person he saw exit the passenger side front window of the white SUV and flee after it finally stopped, and as the person that he helped handcuff when [petitioner] was arrested. Thus, [petitioner] was identified as the driver of the white SUV when it departed the burglary scene, during the attempted escape, and when he was arrested. The white SUV was constantly observed by at least one law enforcement officer from the time it departed the burglary scene until it stopped. No other person was observed in the white SUV from the commencement of the escape episode to its conclusion when he was observed exiting the vehicle through the window of the SUV, and no other person was observed in the vehicle or attempting to flee after it stopped. The evidence is overwhelming that [petitioner] was the driver of the vehicle and that he committed the offenses for which he was charged. Thus, even if the court erred in permitting the introduction of Officer Lewark's testimony that the scuffmarks on the front door of the burglarized residence did not match the shoes that [petitioner] was wearing when he was arrested, which need not be determined, [petitioner] was not prejudiced. The evidence was so overwhelming that a reasonable person must conclude that the outcome of the trial would have been no different had the evidence been excluded.

(Respondent's Exhibit D, pp. 5-7).

The resolutions of grounds 1 and 2 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

-8-

Case 4:11-cv-01156-DW   Document 9   Filed 03/15/12   Page 8 of 13

proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412-13 (2000).[2]

For the above reasons, grounds 1 and 2 are denied.

## GROUND 3- INEFFECTIVE ASSISTANCE OF COUNSEL

In ground 3, petitioner claims his trial attorney was ineffective for failing to introduce the scuffmarks on the door, petitioner's shoes, and testimony of an expert witness to prove that petitioner did kick in the door.

In order to succeed on petitioner's claim of ineffective assistance counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's actions in that there is a reasonable probability that, but for counsel's unprofessional acts, the results of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, supra. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of petitioner's Rule 29.15 motion for post-conviction relief, the

---

[2]According to the opinion of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

-9-

Missouri Court of Appeals disposed of petitioner's claim as follows:

> [Petitioner] argues that his trial counsel was ineffective because he failed to refute Sergeant Lewark's opinion that [petitioner] did not kick in the door of the burglarized residence. In essence, [petitioner] claims that his trial counsel should have negated Sergeant Lewark's testimony and made it seem as though Sergeant Lewark did not testify. [Petitioner] argues that without Sergeant Lewark's testimony, the State would have been unable to prove beyond a reasonable doubt that [petitioner] was driving the SUV and that someone else kicked the door. Yet, this court has already found that if Sergeant Lewark had never given the challenged testimony, the outcome of [petitioner's] trial would have been the same. It is difficult to imagine that trial defense counsel should have anticipated that there was any real opportunity to convince the jury that [petitioner] did not drive the vehicle in question. In any event, [petitioner] did not and cannot demonstrate prejudice.

(Respondent's Exhibit H, pp. 11-12).

The resolution of ground 3 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court does not find counsel was ineffective.

Grounds 3 is denied.

### **GROUNDS 4 & 5– PROCEDURAL DEFAULT**

Petitioner attempts to present two grounds for relief that were not raised either on direct appeal or on appeal from the denial of his Rule 29.15 post-conviction relief motion. In ground 4,

-10-

petitioner alleges that the mens rea element was improperly omitted from the jury instructions. In ground 5, petitioner asserts that the indictment was not signed. Respondent contends that these grounds are procedurally defaulted.

> In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:
>
>> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner raised grounds 4 and 5 only in his pro se Rule 29.15 motion. However, neither ground was pursued on appeal. Therefore, petitioner defaulted grounds 4 and 5 by not raising them on either on direct appeal or on appeal from the denial of his Mo. Sup. Ct. 29.15 motion.

Because petitioner's grounds are procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

To the extent that petitioner disagrees with the decisions of his attorneys to abandon certain grounds when proceeding on appeal, he would still not satisfy the "cause" requirement. "Attorney

-11-

Case 4:11-cv-01156-DW   Document 9   Filed 03/15/12   Page 11 of 13

ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation. . ." Coleman, 501 U.S. at 753. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [there is] no inequity in requiring him to bear the risk of attorney error that results in a procedural default." Id. at 752 (citation omitted). Additionally, because petitioner had no constitutional right to post-conviction counsel, he cannot make the showing required by Strickland. Id. at 752. Therefore, regardless of the propriety of the actions of petitioner's post-conviction attorneys, their actions are attributable to him, and petitioner has procedurally defaulted grounds 4 and 5.

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 4 and 5. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 4 and 5 is barred.

-12-

Case 4:11-cv-01156-DW   Document 9   Filed 03/15/12   Page 12 of 13

Grounds 4 and 5 are denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

    /s/ Dean Whipple
DEAN WHIPPLE
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  March 15, 2012.